IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CV-436-FL

| | |
|---|---|
| BENJAMIN COHANZAD as Trustee of the BENJAMIN COHANZAD TRUST,<br><br>     Plaintiff,<br><br>  v.<br><br>DANIEL JOHNSON, and BROOKWOOD CAPITAL PARTNERS, LLC, d/b/a BROOKWOOD CAPITAL ADVISORS,<br><br>     Defendants. | ORDER |

This matter is before the court upon defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (DE 12). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is denied.

**STATEMENT OF THE CASE**

Plaintiff commenced this action May 29, 2024, in Nash County Superior Court. Plaintiff amended his complaint on July 15, 2024, and defendants removed the suit to this court July 26, 2024, on the basis of diversity jurisdiction. Plaintiff asserts five claims, all under North Carolina law: 1) fraud, 2) civil conspiracy, 3) unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 ("UDTP"), 4) negligence, and 5) negligent misrepresentation. The first three claims are directed against both defendants, while the latter two are pleaded in the alternative against

Brookwood Capital Partners LLC ("Brookwood") alone. Plaintiff seeks damages, trebled as statutorily authorized for the UDTP claim, plus fees and costs.

Defendants filed the instant motion to dismiss August 7, 2024, with reliance upon lease agreements and documentation from the real estate transaction at issue. Plaintiff responded in opposition, and defendants replied, relying upon the registration form for the auction discussed below. Scheduling conference activities have been stayed pending ruling on the instant motion.

## STATEMENT OF FACTS

The facts alleged in the complaint are as follows.[1] Defendant Daniel Johnson ("Johnson") is a citizen of Mississippi who purchased an 81,000 square foot retail strip mall with 12 storefronts in Nash County, North Carolina (the "property"), in April, 2022. (Compl. (DE 1-4) ¶¶ 1–7). At the time of Johnson's purchase, several of the storefronts were vacant and producing no income for Johnson. (Id. ¶ 8). Between April and July, 2022, defendant Johnson engaged defendant Brookwood to "lease[] up" the property and then to market and broker its sale. (Id. ¶ 9). By July, 2022, defendant Brookwood had procured three new tenants for the property with leases dated July 1, 2022, and another two new tenants for the property with leases dated August 1, 2022. (Id. ¶ 11).

On August 9, 2022, defendants listed the property for sale by auction. They marketed it as "100% occupied" and as producing a net operating income of approximately $410,000. (Id. ¶¶ 13–15).

Plaintiff learned of the sale and viewed the marketing brochure and offering memorandum, which were the only materials available to plaintiff prior to registering for the auction. (Id. ¶ 16). To register, plaintiff had to sign a document stating that he would not contact property managers

---

[1] All references to the "complaint" in this order refer to the operative amended complaint at docket entry 1-4.

or any tenants about the property. (Id. ¶ 17). Between September 8 and 12, 2022, plaintiff registered for the auction and received access to the sale marketing package, which included lease and other property information. (Id. ¶ 20). The auction took place from September 12 to 14, 2022. (Id. ¶ 21). On September 14, 2022, plaintiff received an email from Brookwood with an overview of the property's features, including its "410K [net operating income]." (Id. ¶ 22). Plaintiff placed a bid the same day, but did not win the auction. (Id. ¶¶ 23–24).

On September 15, 2022, plaintiff spoke via telephone with a Brookwood agent, who informed plaintiff that the auction winner was backing out of the sale, and asked plaintiff if he still wished to purchase the property. (Id. ¶ 26). The same day, plaintiff and the Brookwood agent negotiated a sale for $3.15 million based on a 100% occupancy rate and a net operating income of around $410,000, and plaintiff signed the resulting purchase agreement September 19, 2022. (Id. ¶¶ 27–28).

Plaintiff flew to North Carolina to observe the property in person for the first time September 19, 2022, and performed "thorough due diligence" through a third party, including a review of the leases, titles, and property condition. (Id. ¶¶ 29, 31). Plaintiff's due diligence was limited by the materials defendants provided. For example, defendants provided plaintiff with copies of the property's leases but refused to provide any of the lessees' contact information. (Id. ¶ 32). Plaintiff grew increasingly concerned through the escrow period about the apparent lack of activity in the newly leased spaces at the property. Because of these concerns, plaintiff requested these new tenants' contact information, which defendants refused to provide. (Id. ¶¶ 33–34).

In response to another inquiry from plaintiff, Brookwood represented on November 21, 2022, that the new tenants were still working on inspections, grant writing, and HVAC issues. (Id.

3

¶ 35). Defendants did not provide tenant contact information until December 1, 2022, after closing took place November 30, 2022. (Id. ¶¶ 36–37).

After closing, plaintiff called each of the five new tenants and discovered that none of the leases was legitimate. (Id. ¶ 39). These tenants represented that they told Brookwood they were not interested in "moving forward," but that Brookwood asked them to sign leases so that the property would appear occupied, thereby increasing the sales price. (Id.). Of these five tenants, four never moved in, and the last moved in, failed to ever pay rent, and then moved out. (Id. ¶ 41). According to the complaint, defendants knew these leases were illusory, and had plaintiff known the same, he would not have consummated the purchase of the property, or would have done so at a significantly lower purchase price reflecting an accurate occupancy rate and net operating income. (Id. ¶¶ 42, 44).

## COURT'S DISCUSSION

A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B. Analysis

Defendants challenge the viability of all five of plaintiff's claims for relief, addressed in turn below.

1. Fraud

Defendants challenge plaintiff's first claim for fraud on grounds of failure to comply with Federal Rule of Civil Procedure Rule 9(b) and to allege justifiable reliance.

Under Rule 9(b), a party pleading fraud must state "with particularity the circumstances constituting fraud[.]" So, a fraud plaintiff must plead the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999); United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008).

Defendants argue that in addition to these heightened requirements, a plaintiff subject to Rule 9(b) must also make specific allegations satisfying that rule as to how the plaintiff discovered the alleged fraud, and to the actual falsity of the alleged misrepresentations. The court does not agree.

a. Particularity

As an initial matter, plaintiff has pleaded, and defendants do not challenge, the additional circumstances identified in Harrison. Plaintiff bases his fraud claim upon misrepresentations about the property's occupancy and net operating income, and makes three allegations that identify the date, speaker, specific content of the alleged misrepresentations, in one case the medium through which the communication was made, and what defendants obtained thereby. (See Compl. ¶¶ 15, 22, 35, 45). The agreed-upon requirements of Rule 9(b) are thus met.

5

Defendants support their argument that a plaintiff must plead discovery of fraud with particularity largely in reliance upon Harrison and United States ex rel. Nicholson v. MedCom Carolinas, Inc., 42 F.4th 185 (4th Cir. 2022). These cases include some ambiguous language on this point, but the lack of any other authority applying the rule defendants suggest bolsters the court's conclusion that these two opinions should not be read as defendants argues.

First, Harrison affirmed the dismissal of a fraud claim on grounds that "[plaintiff] does not state which signature was fraudulent or unauthorized, nor who perpetrated the fraud, nor how the signature was fraudulent. He thus fails Rule 9(b)'s pleading requirements." Harrison, 176 F.3d at 789. Most of this quote reflects the unremarkable requirement that a Rule 9 plaintiff must plead time, place, speaker, and content. Only the last clause of the first sentence quoted could support defendant's argument, but the court is unpersuaded for two reasons: 1) Harrison discussed Rule 9's requirements in detail, and did not announce any rule that applies as defendants argue, and 2) the dismissed count of the complaint in Harrison was skeletal and failed basic pleading requirements under Rule 8 as well, stating merely that a purchase requisition form submitted to the Department of Energy contained "fraudulent and/or unauthorized signatures" and that defendant there knew at least one signature was fraudulent. Id. at 782, 784. The language in Harrison which defendants seeks to wield is, at best for defendants, ambiguous.

Second, defendants take the language of MedCom Carolinas out of context. That case states that "[plaintiff] does offer some support for how he knew about the scheme[,]" which defendants seize upon as requiring a Rule 9 plaintiff to plead discovery of falsity with particularity. The court again disagrees. This sentence in MedCom Carolinas was part of a broader discussion of Rule 9 and how the plaintiff there failed to plead the general Rule 9 requirements pronounced in Harrison. For example, the court noted that the amount defendant gained was pleaded too

6

Case 5:24-cv-00436-FL    Document 18    Filed 12/13/24    Page 6 of 10

generally, and that in the complaint as a whole, "the unknowns swamp the knowns." MedCom Carolinas, 42 F.4th at 196. Further, the alleged fraudulent conduct in that case arose through a convoluted intersection between the Anti-Kickback Statute and various healthcare and Veteran's Administration statutes, such that the United States Court of Appeals for the Fourth Circuit had to take four pages of the Federal Reporter to discern for itself and then explain what the plaintiff there had attempted to allege. See id. at 190–94. The Fourth Circuit merely noted that in at least one respect, plaintiff's allegations were clearer. Given the context and the significant differences between MedCom Carolinas and this case, it does not support defendants' arguments on this claim.

Finally, the court has canvassed Fourth Circuit applications of Rule 9(b), and the requirements defendants seek to enforce are not generally imposed; instead, courts apply only the general requirements stated in Harrison. See, e.g., Smith v. Clark/Smoot/Russell, 976 F.3d 424, 432 (4th Cir. 2015); Kellogg Brown & Root, 525 F.3d at 379; United States ex rel. Ahumada v. NISH, 756 F.3d 268, 280–81 (4th Cir. 2014); see also 5A Wright & Miller, Federal Practice and Procedure, §§ 1297, 1298 (4th ed. 2024).[2] Defendants' particularity requirements do not succeed.[3]

    b.  Reliance

Fraud under North Carolina law requires 1) false representation or concealment of a material fact, 2) reasonably calculated to deceive, 3) made with intent to deceive, 4) which does in fact deceive, 5) resulting in damage to the injured party. Forbis v. Neal, 361 N.C. 519, 526–27 (2007). "Additionally," any reliance on the allegedly false representations must be reasonable. Id.

---

[2] Many cases applying Rule 9(b) arise under the False Claims Act, 31 U.S.C. § 3729 et seq., but because a claim under that statute is inherently fraud-based, this fact does not diminish the applicability of cases applying that statute to other Rule 9(b) actions on this particular point. See NISH, 756 F.3d at 280.

[3] Defendants make an additional argument on whether plaintiff must allege his reliance on defendants' alleged misrepresentations with Rule 9 particularity. See Xia Bi v. McAuliffe, 927 F.3d 177, 184–85 (4th Cir. 2019). However, defendants present this argument only in reply, and district courts generally do not consider arguments raised this way without special circumstances absent here. See, e.g., Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734–35 (D. Md. 2006). The court therefore declines to address this argument.

7

Defendants argue that plaintiff did not reasonably rely on any of their alleged misrepresentations. Reasonableness of reliance is usually a question of fact "unless the facts are so clear that they support only one conclusion." Head v. Gould Killian CPA Grp., P.A., 371 N.C. 2, 9 (2018). This demanding standard is not satisfied here.

Plaintiff pleads only sparse facts on his investigation. His pleaded inquiries amount to two requests for tenant contact information and hiring a third party to perform unspecified due diligence which included review of property leases, titles, and conditions. (Compl. ¶¶ 31, 34, 36). But plaintiff received copies of all the allegedly illusory leases before closing, which included the names of the businesses and the individuals who had signed the leases on the businesses' behalf. (See Mot. Dismiss Ex. A (DE 13-1)).[4] Plaintiff therefore had substantial information on the tenants and the property, but alleges no attempt to perform any investigation besides his unspecified "due diligence" and twice requesting contact information from defendant.

However, this case aligns with Cummings v. Carroll, 379 N.C. 347 (2021), compelling the court to rule for plaintiff on this issue and at this stage. In Carroll, the Supreme Court of North Carolina stated that reasonable reliance challenged for failure to perform additional investigation, as opposed to reliance upon demonstrably false information, is a fact question. See id. at 370. Indeed, defendants speculate about plaintiff's ability to find accurate information through basic internet research. This is a classic factual issue, especially given the lack of any evidence for this point in the pleadings or elsewhere. The court therefore cannot determine whether plaintiff was denied the opportunity to investigate or could not have discovered the truth at this stage. Whatever the strength of defendants' arguments on plaintiff's investigation in a vacuum, Carroll compels the

---

[4] The court may consider this exhibit because the leases are integral and relied upon in the complaint, and plaintiff does not challenge their authenticity. Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).

8

survival of this claim through the Rule 12 stage. Defendants also argue that plaintiff's subscription to form language in the bidding registration form, stating that he made his bid based on his own "findings and conclusions," contradicts plaintiff's reliance arguments. (Reply Br. Ex. A (DE 17-1) 3). This argument fails even if the court considers this document as integral to the complaint. No reason exists to exclude defendants' alleged misrepresentations from the universe of information that formed and constituted plaintiff's "findings and conclusions."

In sum, plaintiff's fraud claim survives defendants' motion.

2. N.C. Gen. Stat. § 75-1.1 ("UDTP")

A UDTP claim that rests upon fraud as a predicate is evaluated under Rule 9(b), and such a plaintiff must establish reasonable reliance. See Arnesen v. Rivers Edge Golf Club & Plantation, Inc., 368 N.C. 440, 451–52 (2015); Bite Busters, LLC v. Burris, 2021 NCBC 19, at *10 (N.C. Bus. Ct. 2021). As such, defendants argue for dismissal of this claim solely on grounds that their arguments on fraud defeat this claim as well. Because defendants' fraud arguments do not succeed, this incorporated argument meets the same fate.

3. Civil Conspiracy

Civil conspiracy is not an independent claim under North Carolina law, and instead requires a separate underlying tort. E.g., New Bar P'ship v. Martin, 221 N.C. App. 302, 310 (2012); Strickland v. Hendrick, 194 N.C. App. 1, 19 (2008). Defendants argue that because plaintiff's other claims fail, this count cannot stand alone. Because plaintiff's other claims survive, this argument fails.

4. Negligent Misrepresentation and Negligence

A negligent misrepresentation claim under North Carolina law includes an element that the party receiving the allegedly negligent statements justifiably relied upon them. Dallaire v. Bank

9

of Am., N.A., 367 N.C. 363, 369 (2014). This element is evaluated under the same standards as the reliance element of fraud, and so too is generally a question of fact. See Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP, 350 N.C. 214, 224 (1999). Defendants' only argument on the negligent misrepresentation claim here is that it fails for the same reasons as plaintiff's fraud claim. Because defendants' arguments on the fraud reliance element do not succeed at this stage, this argument does not prevail.

Defendants attack plaintiff's claim for ordinary negligence as subject to the same standards as the negligent misrepresentation count, and as therefore defective for failure to allege properly the reliance element. This argument fails for the same reasons as against plaintiff's other claims as discussed above.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (DE 12) is DENIED. The stay of discovery and scheduling conference deadlines imposed September 19, 2024, is hereby LIFTED. The court's initial order regarding case planning and scheduling shall follow.

SO ORDERED, this the 13th day of December, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge